United States District Court
Southern District of Texas
**ENTERED**
November 19, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FRED G. MARTINEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-158 |
| | § | |
| NUECES COUNTY SHERIFF'S | § | |
| OFFICE/JAIL, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE

This civil rights action was filed by a Texas state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff Fred G. Martinez's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States,* 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez,* 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that Plaintiff's deliberate indifference claims regarding Plaintiff's bedding situation be retained against two defendants in their individual capacity.  It is respectfully recommended further that: (1) Plaintiff's claims for money damages against certain defendants in their official capacities be dismissed as barred by the Eleventh Amendment; (2) Plaintiff's claims for declaratory and injunctive relief against Defendants be dismissed as rendered moot by Plaintiff's transfer to a TDCJ facility; and (3) Plaintiff's remaining claims against all Defendants be dismissed as frivolous and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.      JURISDICTION.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.     BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the Stiles Unit in Beaumont, Texas.  Plaintiff was convicted in Nueces County on two counts of indecency with a child and sentenced to twelve years in prison on each count.  He was sentenced for these convictions on March 23, 2016.

Plaintiff's allegations in this case arise in connection with his confinement at the Nueces County Jail around the time he was sentenced to prison on March 23, 2016.  In his original complaint, Plaintiff sued: (1) the Nueces County Sheriff's Office/Jail; (2) Nueces County Sheriff Jim Kaelin; and (3) all booking officers under Sheriff Kaelin's

directions.   Plaintiff claimed that he was: (1) wrongfully and illegally housed in an inadequate jail cell for a time period exceeding the 48-hour time period following the booking process; (2) held "in an unauthorized jail cell in the facility's basement" from March 23, 2016 through April 26, 2016; (3) denied adequate food during the time he spent in the unauthorized jail cell; (4) denied all forms of communication and access to courts; and (5) denied certain minimal necessities "as he slept on an extremely cold concrete floor" while confined in the unauthorized jail cell.  (D.E. 1, pp. 2, 7-11).

After submitting his original complaint, Plaintiff submitted numerous pleadings consisting of two supplements, a motion seeking leave to file supplemental evidence, and a motion seeking leave to file an amendment to his complaint.  Due to the difficulty encountered in evaluating Plaintiff's claims as presented in multiple pleadings, the undersigned directed Plaintiff to file a comprehensive amended complaint so that he could present all of his claims in one pleading.  (D.E. 19).

On September 21, 2018, Plaintiff filed his amended complaint[1] in which he seeks to sue the following defendants in their individual and official capacities: (1) the Nueces County Sheriff's Office/Jail; (2) Sheriff Kaelin; (3) Officer Perales; (4) Officer Zapata; (5) all booking officers under Sheriff Kaelin's directions; (6) Officer John Doe; (7) Texas Commission of Jail Standards (TCJS); (8) TCJS Inspector Jackie Benningfield; and (8) TCJS Assistant Director Shannon J. Herklotz.   (D.E. 28).   Plaintiff claims that Defendants are responsible for the following harms that occurred from March 23, 2016 through May 26, 2016: (1) illegally holding Plaintiff in an unauthorized, inadequate jail

---

[1] Plaintiff's amended complaint supersedes all previous complaints filed and is the operative pleading in this case.

cell; (2) denying Plaintiff reasonably adequate sanitation; (3) denying Plaintiff reasonably adequate food; (4) denying Plaintiff "minimal life necessities"; and (5) denying Plaintiff all forms of communication and access to the courts.  (D.E. 28, p. 3).  Plaintiff seeks declaratory, injunctive, and monetary relief.  (D.E. 28, p. 4).

Plaintiff alleges the following relevant facts in his amended complaint.  Following his sentence on March 23, 2016, Plaintiff was remanded into the custody of Sheriff Kaelin at the Nueces County Jail.  From March 23, 2016 through April 11, 2016, and from May 23, 2016 through May 26, 2016, Plaintiff was housed in an inadequate holding cell called the "dungeon" as it was located in the jail's basement.  Plaintiff claims he was held in this holding cell beyond the 48-hour time limit allowed for the booking/holding process.

Plaintiff attached to his complaint a letter, dated January 24, 2017, authored by Jackie Semmler from the TCJS.   (D.E. 28-3, p. 2).  In this letter, Ms. Semmler first noted one concern regarding Plaintiff's placement in a holding cell in excess of 48 hours.  (D.E. 28-3, p. 2).  She further wrote that: (1) all inmates in holding receive sandwiches until they are transferred to a housing unit; (2) Plaintiff received a shower on May 24, 2016 and had access to a shower sixteen hours a day; (3) minimum jail standards require each inmate to be given an opportunity to shower at least every other day or more if possible; and (4) it is standard jail policy to issue inmates hygiene supplies when they are transferred to the proper housing unit.  (D.E. 28-3, p. 2).

Plaintiff also submitted a letter dated February 9, 2017, from TCJS Assistant Director Herklotz.  (D.E. 28-3, pp. 3-4).  After reviewing Plaintiff's allegations about the

Nueces County Jail with jail staff and Inspector Benningfield, Assistant Director Herklotz determined that "**no** violations of jail standards ha[d] occurred." (D.E. 28-3, p. 3 (emphasis in original)). Her letter included a timeline depicting where Plaintiff was housed during his time at the Nueces County Jail. (D.E. 28-3, p. 3). She further wrote that, pursuant to the policies of the Nueces County Jail, bedding and hygiene items are not allowed in the holding or detoxification cells without approval by the medical staff and that inmates in holding are provided a shower every other day. (D.E. 28-3, p. 4).

Despite the findings contained in the TCJS letter, Plaintiff alleges that his extended placement in the holding cell known as the "dungeon" subjected him to inadequate sanitation. Specifically, Plaintiff was denied: (1) proper access to the showers every other day as outlined in the policy for jail standards; (2) daily clean changes of clothing; (3) sanitation supplies; and (4) proper working toilets and sinks. While Plaintiff was confined in the holding cell, he was fed poorly with only bologna sandwiches that were spoiled on occasion.

Plaintiff next states that, during his confinement in the holding cell, he was denied a mattress, a blanket, undergarments, and hygiene. He was, therefore, forced to sleep on the cold concrete floor for the twenty-two days he was confined in the holding cell. As a result of these sleeping conditions, Plaintiff suffered a medical issue involving his nasal passages. Despite this medical issue, prison officials continued to deny Plaintiff's request for a mattress, pillow, and blankets.

After Plaintiff was transferred into TDCJ custody, he was immediately informed by TDCJ doctors that his condition required reconstructive surgery of his air passage

way.  Plaintiff states that he underwent surgery for his nasal condition on April 3, 2018.  Plaintiff submitted medical records indicating that he was hospitalized on April 3, 2018 and diagnosed with a nasal obstruction.  (D.E. 28-3, p. 5).  The medical records reflect that Plaintiff was prescribed with various pain medications and ultimately discharged on April 4, 2018.  (D.E. 28-3, pp. 5-6).

During his time in confinement in the holding cell, Plaintiff was denied phone privileges, access to the commissary to purchase mailing supplies, and access to the law library to seek information on his plight.  Plaintiff states that his lack of access to the courts directly affected the outcome of his trial due since he could not communicate with his lawyer, family, and witnesses.  Plaintiff acknowledges that he was able to retain an attorney and file a petition for new trial with the trial court.

Plaintiff further complains that jail officials negligently transferring him into TDCJ custody from May 9, 2016 through May 23, 2016, causing him to miss his court appearance on May 13, 2016 before the Nueces County district court.  Plaintiff was returned to the Nueces County Jail on May 23, 2016 but was not allowed to communicate with his counsel until minutes before his "trial" started on May 25, 2016.

Plaintiff asserts that he suffered physically and emotionally as a result of his conditions of confinement at the Nueces County Jail, which he attributed to all custodial officers assigned to the booking process.   According to Plaintiff, Officers Perales and Zapata specifically directed other officers to act against Plaintiff.

## III.    LEGAL STANDARD.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Biliski v. Harborth,* 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal,* 556 U.S. at 678. The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).

A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).

## IV.    DISCUSSION

### A.    Claims for Injunctive and Declaratory Relief

Plaintiff seeks injunctive and declaratory relief against Defendants based on his conditions of confinement at the Nueces County Jail. Claims for declaratory

and injunctive relief based on the conditions of confinement, however, are rendered moot upon prisoner's release from custody or transfer to another facility. *Smith v. City of Tupelo, Mississippi*, 281 F. App'x 279, 282 (5th Cir. 2008) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)).  *See also Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000) (requests for injunctive and declaratory relief become moot when inmate is transferred to another facility).  Furthermore, the possibility of Plaintiff's return to the Nueces County Jail is much too speculative to warrant relief. *Smith*, 281 F. App'x at 282.  Because Plaintiff is no longer incarcerated at the Nueces County Jail, it is respectfully recommended that his claims for declaratory and injunctive relief against Defendants be dismissed.

### B.  Official Capacity Claims (TCJS and its Employees)

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment, however, bars claims for money damages against a state or state agency.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). Plaintiff's claims seeking monetary relief against the TCJS, therefore, are barred by the Eleventh Amendment.  *Coalwell v. Bexar Adult Detention Center*, No. SA-16-CA-506, 2016 WL 4033272, at *2 (W.D. Tex. Jul. 27, 2016).  Accordingly, the undersigned respectfully recommends that Plaintiff's claims against the TCJS be dismissed with prejudice.

Furthermore, an action for monetary damages against a state official in his or her official capacity is one against the state itself and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Indeed, the Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities.  *See Oliver*, 276 F.3d at 742 (recognizing that the Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff sues TCJS Inspector Benningfield and TCJS Assistant Director Herklotz in their official capacities for money damages, those claims are barred by the Eleventh Amendment.  Accordingly, it is respectfully recommended that Plaintiff's claims for money damages against these defendants in their official capacities be dismissed with prejudice.

### C.    Official Capacity Claims and Municipal Liability

#### (1)    *Police and Sheriff's Departments*

Plaintiff names the Nueces County Sheriff's Office/Jail as a defendant in this case. However, neither the jail nor the Sheriff's officer is an entity capable of being sued. *Rogers v. Nueces County Jail*, No. C-07-410, 2007 WL 4367814, at *4 (S.D. Tex. Dec. 13, 2007) (citing *Darby v. Pasadena Police Dep't,* 939 F.2d 311 (5th Cir. 1991)). Instead, the proper party is Nueces County.  *See Rogers*, 2007 WL 4367814, at *4. Thus, it is respectfully recommended that Nueces County be substituted in place of Nueces County Sheriff's Office/Jail as a party defendant in this case.

### (2)   Claims against the Municipality and Individual Nueces County Defendants in their Official Capacities

Plaintiff sues Nueces County officials Kaelin, Perales, Zapata, Officer Doe, and all booking officers under Sheriff Kaelin's directions (collectively "Nueces County Individual Defendants) in their official capacities.  However, such official capacity suits "generally represent only another way of pleading an action against an entity of which the officer is an agent."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotations and citation omitted).  Plaintiff's lawsuit against the Nueces County Individual Defendants is effectively a suit against Nueces County.  *See Will*, 491 U.S. at 71; *Johnson v. Hurtt*, 893 F. Supp. 2d 817, 828 (S.D. Tex. 2012).  Accordingly, it is respectfully recommended that Plaintiff's claims against the Nueces County Individual Defendants in their official capacities be dismissed with prejudice.

In order to state that Nueces County is liable for any constitutional violations based on Plaintiff's allegations, Plaintiff must state that any constitutional deprivations were caused by (1) an official policy or custom; (2) promulgated by the municipal policy-maker; (3) that was the moving force behind the violation of his constitutional rights.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658, 694 (1978)).  Municipal liability cannot be established on the basis of respondeat superior.  *Monell*, 436 U.S. at 694.  A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it "through some official action or imprimatur."  *Piotrowski*, 237 F.3d at 578.

Official policy can arise in various forms.  It may be a policy statement, ordinance, regulation, or decision that has been officially adopted and promulgated by a policy maker.  *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).  In addition, it may arise in the form of a wide-spread practice that, while unofficial, is "so common and well-settled as to constitute a custom that fairly represents municipal policy.  *Piotrowski*, 237 F.3d at 579 (quoting *Webster,* 735 F.2d at  841).

Plaintiff has alleged no facts in this case suggesting that Nueces County had either an official policy or a wide-spread practice that compelled Sheriff Kaelin or other officials at the Nueces County Jail to deprive Plaintiff of his rights by placing him in an inadequate jail, denying him the minimal necessities of life, and denying him access to the courts.  The allegations in Plaintiff's complaint center on his claims that Defendants violated the policies and jail standards in place and not on whether the policies and standards themselves were the moving force behind the alleged constitutional deprivations.  *See Hill v. Texas*, No. 4:13-CV-652, 2013 WL 5273342, at *3 (N.D. Tex. Sep. 19, 2013) (dismissing claim for municipal liability against Parker County because amended complaint failed to allege facts showing the alleged policy was the moving force behind any constitutional violation).  Because Plaintiff's allegations are insufficient to state a § 1983 claim for municipal liability, it is respectfully recommended that Plaintiff's claims against Nueces County be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### D.     Individual Capacity Claims

#### (1)  *Supervisory Liability*

Plaintiff sues Sheriff Kaelin in his supervisory role.  "Personal involvement is an essential element of a civil rights cause of action."  *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).  There is no vicarious or *respondeat superior* liability of supervisors under section 1983.  *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987).  *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).  Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional deprivation.  *Evett v. Deep East Tex. Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003) (citing *Thompkins*, 828 F.2d at 304).

Plaintiff alleges that Sheriff Kaelin "is legally responsible for the overall operations of the Nueces County Jail." (D.E. 28-1, p. 2).  He fails, however, to allege any facts to suggest that Sheriff Kaelin participated in any acts causing constitutional violations or that a causal connection exists between Sheriff Kaelin's conduct and the alleged constitutional deprivations.  Accordingly, it is respectfully recommended that Plaintiff's claims against Sheriff Kaelin in his supervisory role be dismissed as frivolous and/or for failure to state a claim for relief.

### (2)   TCJS Investigation

Plaintiff states that he complained to the TCJS about violations of certain jail standards in the Nueces County Jail.  According to Plaintiff, Inspector Benningfield and Assistant Director Herklotz ignored the findings of another TCJS inspector and improperly determined that Plaintiff's conditions of confinement in the Nueces County Jail did not violate any objective jail standards.   Plaintiff further complains about the actions of Officer John Doe from the Nueces County Jail, who participated in the faulty TCJS investigation into Plaintiff's complaints.

Plaintiff's allegations indicate that Defendants Benningfield and Herklotz were made aware of Plaintiff's complaints and then proceeded to investigate them.  Through the February 9, 2017 letter, TCJS Assistant Director Herklotz ultimately determined that there were no jail violations.  (D.E. 28-3, pp. 3-4).  Defendants Doe, Benningfield, and Herklotz however, were not personally involved in any decisions made by officials at the Nueces County Jail to place Plaintiff in the holding cell for an extended period of time.  *See Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.")

Plaintiff's allegations, at best, point to his dissatisfaction with the investigation into his TCJS complaint and the ultimate decision by Defendants Benningfield and Herklotz to reject his complaint.  When prisoners file institutional grievances and then challenge through a prisoner civil action the investigations into and the decisions rendered as to those grievances, courts generally hold that such challenges fail to state a cognizable constitutional claim.  *See Jones v. North Carolina Prisoners' Labor Union,*

*Inc.,* 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures are not constitutionally required); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir.  2007) (holding that the plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances).

Similarly, Plaintiff's claims attacking the failure of Officer John Doe, TCJS Inspector Benningfield, and TCJS Assistant Director Herklotz to investigate and resolve his complaints about the conditions of the Nueces County Jail in his favor fail to implicate a constitutional right.  *See Seaman v. Mayo*, No. 4:05-CV-636, 2006 WL 3438630, at * (N.D. Tex. Nov. 14, 2006) (dismissing Plaintiff's claim against TCJS Executive Director Terry Julian for failure to investigate his underlying medical claim). Accordingly, the undersigned recommends dismissing Plaintiff's claims against Defendants Doe, Benningfield and Herklotz in their individual capacities.

### (3)  Due Process

Liberally construed, Plaintiff claims that his placement in a holding cell beyond the 48-hour time limit allowed for the booking/holding process violated his due process rights.  Plaintiff alleges that he was held in this cell from March 23, 2016 through April 11, 2016, and from May 23, 2016 through May 26, 2016.  To the extent Plaintiff claims his time in the holding cell exceeded the 48-hour jail policy, such claim without more does not amount to a constitutional violation.  *See Myers v. Klevenhagen*, 97 F.3d 91, 94

14 / 23

(5th Cir. 1996) (holding "that a prison official's failure to follow the prison's own policies, procedures, or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met").

Furthermore, due process protections attach only to those conditions of confinement that impose an atypical and significant hardship in relation to ordinary incidents of prison life, or to those that extend the length or duration of confinement. *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995). Plaintiff's two short-term placements in the Nueces County Jail's holding cell does not constitute an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life," such that any due process concerns are implicated. *See Lowe v. Lee*, No. 3:17-CV-448, 2017 WL 6030045, at *3 (W.D. La. Oct. 23, 2017) (internal quotations and citations omitted).

### *(4)  Deliberate Indifference*

A review of the TDCJ website reflects that Plaintiff was sentenced on March 23, 2016. His allegations and claims arise from events that occur after his date of sentencing. Plaintiff's constitutional rights as a convicted inmate, therefore, stem from the Eighth Amendment's prohibition on cruel and unusual punishment. U.S. Const. amend. VIII.

"The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)). Prison officials are required to must provide humane conditions of

confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).

A constitutional violation under the Eighth Amendment occurs only when two requirements are met. "First, there is an objective requirement that the condition must be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted). "Second, under a subjective standard, [the court] must determine whether the prison official responsible was deliberately indifferent to inmate health and safety." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted). Deliberate indifference is more than mere negligence. *Farmer*, 511 U.S. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. Id. at 837.

### *Sanitation*

The Fifth Circuit has recognized that an unsanitary environment can support an Eighth Amendment claim of deliberate indifference. For example, in *Daigre v. Maggio*, 719 F.2d 1310 (5th Cir. 1983), the Fifth Circuit recognized:

> As a safeguard against the "gratuitous infliction of suffering," the eighth amendment forbids confinement under conditions that can lead to painful and tortuous disease with no penological purpose. We concluded over a decade ago that the eighth amendment forbids deprivation of the basic elements of hygiene. We observed this "common thread" woven through judicial condemnations of prison conditions, noting in most of the prior cases the deprivation of facilities for elementary sanitation.

Daigre, 719 F.2d at 1312.

In connection with his twenty-two days in the Nueces County Jail holding cell dungeon between March 23, 2016 and May 26, 2016, Plaintiff alleges that he was denied: (1) proper access to the showers every other day; (2) daily clean changes of clothing; (3) sanitation supplies; and (4) proper working toilets, sinks, and other hygiene.  Short-term sanitation problems or restrictions, however, do not amount to an extreme deprivation necessary to make out a conditions-of-confinement claim.  *See Davis v. Scott*, 157 F.3d 1003, 1005-06 (5th Cir. 1998).

Plaintiff further alleges nothing to suggest that he suffered any illness or harm as a result of these unsanitary conditions.   He, therefore, has failed to state an Eighth Amendment claim with regard to lack of sanitation.  *See Flores v. TDCJ Transitional Planning Dept. Southern Region Inst. Div.*, No. 2:14-CV-283, 2015 WL 3727833, at *7 (S.D. Tex. Jun. 15, 2015) (dismissing prisoner's claim that the prison unit's showers were unsanitary because he admitted he had suffered no illness or harm as a consequence of the unsanitary condition).  *See also Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("there is … a *de minimis* level of imposition with which the Constitution is not concerned").  Accordingly, the undersigned respectfully recommends that these claims be dismissed as frivolous and/or for failure to state a claim for relief.

17 / 23

### *Bedding*

The Fifth Circuit has held in a non-published opinion that "the denial for two and one-half days of a mattress, blanket, and toilet paper, without more, to an inmate with a cold confined indoors does not constitute a deprivation of the minimum civilized measures of life's necessities."   *Philips v. East*, 81 F. App'x 483, 484 (5th Cir. 2003). Likewise, several other circuit courts have held that deprivation of a mattress for a limited period of time is not *per se* unconstitutional. *See, e.g., Fischer v. Ellegood,* 238 F. App'x. 428, 433 (11th Cir. 2007) (concluding that sleeping on floor for five days does not violate Eighth Amendment); *Stephens v. Cottey,* 145 F. App'x. 179, 181 (7th Cir. 2005) (finding no Eighth Amendment violation when prisoner slept without a mattress on a metal bedframe for three days and on the floor with no bedframe for five days); *Grissom v. Davis,* 55 F. App'x 756, 757-58 (6th Cir. Feb. 12, 2003) (holding that seven days without mattress, sheets or blanket was not deprivation of basic human needs when it did not cause serious harm); *O'Leary v. Iowa State Men's Reformatory,* 79 F.3d 82, 84 (8th Cir. 1996) (concluding that sleeping on concrete slab without mattress or blanket for four days in cell ten feet from exterior door during winter did not deny plaintiff minimal civilized measures of life's necessities).

In this case, Plaintiff alleges he was denied a mattress, pillows, a blanket, undergarments, and other hygiene during his twenty-two day stay in the dungeon. Plaintiff further alleges that: (1) he was forced to sleep on the cold concrete floor for over this three-week period; (2) he suffered from a serious medical issue involving his nasal passages as a result of sleeping on the cold floor; (3) after he left the Nueces County Jail

into TDCJ custody, his condition was immediately addressed and diagnosed as a serious medical condition requiring surgery; and (4) Plaintiff underwent major reconstructive surgery for his nasal passages on April 4, 2018.

According to Plaintiff, Officers Perales and Zapata were responsible in directing subordinate officers not to supply Plaintiff with proper bedding supplies in the holding cell.  Plaintiff's allegations, therefore, suggest that Officers Perales and Zapata may have acted with deliberate indifference to Plaintiff's health by denying him necessary bedding materials for a period of time totaling over three weeks and that such actions resulted in serious harm to Plaintiff.  Accordingly, the undersigned recommends that this deliberate indifference claim be retained against only Officers Perales and Zapata.

### *Meals*

On the issue of food, "[t]he constitution requires only that inmates be provided with well-balanced meals, containing sufficient nutritional value to preserve health." *Davis v. Stephens*, No. 2:15-CV-211, 2015 WL 4887577, at *8 (S.D. Tex. Aug. 17, 2015) (citing *Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986)).  The prison system is not required to provide inmates with three meals a day.  *Green*, 801 F.3d at 770.

While Plaintiff was confined in the holding cell, he was fed poorly with spoiled bologna sandwiches.  Plaintiff, however, has alleged no specific facts indicating that: (1) the meals received were nutritionally insufficient to preserve health; or (2) he suffered any actual harm as a result of receiving bologna sandwiches while he was confined in the holding cell over a three-week period.  "Without an allegation of resulting harm, complaints regarding food service practices simply are not of constitutional dimension."

19 / 23

*See Billizone v. Jefferson Parish Correctional Center*, No. 14-1263, 2015 WL 1897683, at *5 (E.D. La. Apr. 27, 2015) (internal quotations and citations omitted).   Accordingly, the undersigned respectfully recommends that Plaintiff's claims involving meals received while he was confined in the holding cell be dismissed as frivolous and/or for failure to state a claim for relief.

### (5)  *Denial of Access to Courts*

Plaintiff alleges that, during his time in the Nueces County Jail holding cell, he was denied phone privileges, access to the commissary to purchase mailing supplies, and access to the law library to seek information on his plight.   He further alleges that jail officials negligently transferred him into TDCJ custody from May 9, 2016 through May 23, 2016, causing him to miss a court appearance on May 13, 2016 before the Nueces County district court.   Plaintiff was returned to the Nueces County Jail on May 23, 2016 but was not allowed to communicate with his counsel until minutes before his "trial" started on May 25, 2016.   Plaintiff states that his lack of access to the courts directly affected the outcome of his trial due since he could not communicate with his lawyer, family, and witnesses.

Prisoners have a constitutionally protected right of access to the courts.  *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). Because the right of access is not a "freestanding right," to state a cognizable First Amendment claim, the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts.  *Lewis,* 518 U.S. at 351; *Chriceol v. Phillips*, 169 F.3d 313,

317 (5th Cir. 1999). Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts. *Lewis*, 518 U.S. at 349.

To meet the standing requirement, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Plaintiff "must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized as to him." *Id.* at 819. In particular, to succeed on a claim of denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *See Lewis*, 518 U.S. at 356.

However, it is well settled in the Fifth Circuit that "a criminal defendant's right of access to the courts is not infringed if he is represented by counsel. *Haley v. Natchitoches Parish Detention Center*, 602 F. App'x 1008, 1009 (5th Cir. 2015) (citing *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir. 1981)). As noted above, Plaintiff was sentenced on March 23, 2016. Plaintiff acknowledges that he was represented by an attorney who filed a petition with the trial court seeking a new trial. Plaintiff has attached to his amended complaint: (1) an order from the Nueces County district court setting a hearing on Plaintiff's motion for new trial on May 13, 2016 (D.E. 28-3, p. 7); and (2) an exhibit showing that he was unable to prevail on his argument in support of his motion for new trial (D.E. 28-3, p. 9).

Because Plaintiff was represented by counsel in connection with his motion for new trial, he cannot state a claim that his right to access the courts was violated. *See*

*Ashcraft v. Cameron County*, 157 F.3d 900, 1998 WL 611201, at *2 (5th Cir. Aug. 17, 1998) (dismissing plaintiff's access-to-court claims because he was represented by counsel for his motion for new trial and throughout the appellate process). Accordingly, the undersigned respectfully recommends that Plaintiff's First Amendment claims against Defendants for denial of access to the courts be dismissed as frivolous and/or for failure to state a claim for relief.

## V.     CONCLUSION.

For the reasons stated above, it is respectfully recommended that Nueces County be substituted in place of Nueces County Sheriff's Office/Jail as a party defendant in this case. It is respectfully recommended that Plaintiff's deliberate indifference claims with regard to bedding supplies against Defendants Perales and Zapata in their individual capacities be retained. By separate order, the undersigned will direct service on these defendants.

Lastly, it is respectfully recommended that: (1) Plaintiff's claims for money damages against certain defendants in their official capacities be dismissed as barred by the Eleventh Amendment; (2) Plaintiff's claims for declaratory and injunctive relief against all Defendants be dismissed as rendered moot by Plaintiff's transfer to a TDCJ facility; and (3) Plaintiff's remaining claims against all Defendants be dismissed as

frivolous and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted this 18th day of November, 2018.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).